IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MELISSA L.,[1]

       Plaintiff,

   v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

       Defendant.

**Civ. No. 6:20-cv-01956-MC**

**OPINION AND ORDER**

_____

**MCSHANE, Judge**:

    Plaintiff Melissa L. was denied supplemental security income under Title XVI of the Social Security Act. She appeals to this Court, arguing that the Administrative Law Judge ("ALJ") erred by discounting her symptom testimony, improperly evaluating medical opinions, and improperly rejecting lay witness testimony. Because the Commissioner of Social Security's ("Commissioner") decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

    The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). A reviewing court affirms the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1114–15

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

(9th Cir. 2021). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the Court reviews the entire administrative record, weighing both the evidence that supports and detracts from the ALJ's decision. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## <u>DISCUSSION</u>

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2012). The initial burden of proof rests on the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant can adjust to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.* If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner shows that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

At step two here, the ALJ found that Plaintiff had the following severe impairments: psoriasis; major depression; bipolar disorder; PTSD; scoliosis; hand arthritis; and a history of methamphetamine abuse in recent remission. Tr. 18.[2] The ALJ found that Plaintiff

> has the [RFC] to perform light work . . . except she can occasionally climb ramps, stairs, ladders, ropes, or scaffolds. She can frequently stoop, but only occasionally kneel, crouch, or crawl. She can frequently handle and finger bilaterally. She must avoid concentrated exposure to extreme cold or wetness. She can tolerate occasional contact with co-workers or the general public. She must avoid assembly

---

[2] "Tr." refers to the Transcript of the Social Security Administrative Record provided by the Commissioner.

line-pace work. She can tolerate few, if any, changes in the workplace. She can
make simple work-related decisions.

Tr. 20. Based on the vocational expert's testimony, the ALJ concluded that Plaintiff could perform

jobs that exist in significant numbers in the national economy. Tr. 24–25. The ALJ thus determined

that Plaintiff was not disabled. Tr. 25.

## I. Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ erred by not fully crediting her subjective symptom testimony

as true. Pl.'s Op. Br. 15, ECF No. 15. Absent affirmative evidence of malingering, the ALJ must

provide clear and convincing reasons for discrediting the claimant's testimony regarding the

severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir.

2008). But the ALJ is not "required to believe every allegation of disabling pain, or else disability

benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."

*Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). The ALJ may consider

several factors, including:

> (1) whether the claimant engages in daily activities inconsistent with the alleged
> symptoms; (2) whether the claimant takes medication or undergoes other treatment
> for the symptoms; (3) whether the claimant fails to follow, without adequate
> explanation, a prescribed course of treatment; and (4) whether the alleged
> symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *see also Ghanim v. Colvin*, 763 F.3d

1154, 1163 (9th Cir. 2014).

It is proper for the ALJ to consider the objective medical evidence in making a credibility

determination. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). However, an ALJ may not make a

negative credibility finding "solely because" the claimant's symptom testimony "is not

substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d

880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however,

when the claimant's statements at the hearing "do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). Ultimately, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record, [this Court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff alleges debilitating physical symptoms resulting from her psoriasis and rheumatoid arthritis. *See* Pl.'s Op. Br. 15–16; tr. 34–35. Plaintiff testified that she experiences psoriasis all over her body and recently began treatment with Humira. Tr. 44–45. She described chronic back pain and an inability to stand for very long. Tr. 49. As a result of her arthritis, her hands "will go completely numb," tingle, or cramp. Tr. 48. She explained that, for example, if she is holding a pen, her hand will cramp and then she can no longer move her hand to get the pen out. Tr. 48. When using a keyboard or her smartphone she is limited to "maybe a minute" of use before her fingers start to tingle, go numb, and she has to take a break because of aching. Tr. 48. Plaintiff testified that her mom and boyfriend help her with certain household chores because she "can't hold on stuff for too long." Tr. 49.

Regarding her mental health symptoms, Plaintiff testified that she has problems getting along with other people because she is not a "people person." Tr. 46. She and her boyfriend very rarely do things outside of the house. Tr. 46–47. Plaintiff gets irritated with people easily and prefers to isolate herself. Tr. 46. Her irritability often manifests verbally by saying "a lot of hateful things." Tr. 47. Sometimes it has led to physical altercations with people, including at the workplace, and she has been terminated in those situations. Tr. 47, 51.

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other

evidence in the record." Tr. 21. The ALJ acknowledged that some clinical findings "reasonably justify certain physical and mental limitations," but explained that Plaintiff's "inability to work without some pain and discomfort [] does not necessarily satisfy the test for disability" under the Social Security Act. Tr. 21–22. The ALJ went on to discount Plaintiff's symptom testimony mainly because it conflicted with the medical evidence.

The ALJ pointed to several treatment notes showing that Plaintiff presented as "alert, pleasant, and in no acute distress." Tr. 22. The ALJ noted Plaintiff's normal gait and ability to move her extremities symmetrically at multiple examinations. Tr. 22. Despite Plaintiff's complaints of acute right shoulder pain after sitting on a concrete bench for an extended period, the ALJ noted Plaintiff's normal gait and mobility at exams within weeks of the incident. Tr. 22. At Plaintiff's consultative examination, the ALJ pointed out that Plaintiff presented in "no acute distress and moved 'easily' around the examination room." Tr. 22. Additionally, "[d]espite hearing testimony that [Plaintiff] struggles to hold items for prolonged periods, [Plaintiff] was reportedly able to grip and hold items securely" during the consultative examination. Tr. 22. The ALJ concluded that "[s]uch clinical findings are not indicative of a debilitating pain condition." Tr. 22. As to Plaintiff's mental health symptoms, the ALJ again contrasted their alleged severity with the medical evidence. The ALJ noted that plaintiff was reported as "pleasant and conversant" several times in a clinical setting despite complaints of irritability and anger. Tr. 22.

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for finding Plaintiff's testimony not credible. Pl.'s Op. Br. 17. The ALJ merely provided boilerplate language supported by only a cursory summary of the medical record, according to Plaintiff. *Id.* While the Court agrees that the ALJ appropriately provided a summary of the medical records, the Court disagrees that the ALJ failed to point to specific parts of the record in concluding Plaintiff was not

fully credible as to the extent of her limitations. The ALJ specifically noted that despite complaints of chronic pain and weakness in her back and hands, Plaintiff consistently presented with a normal gait and was able to move her extremities symmetrically at multiple examinations. Tr. 22. The ALJ further relied on several of Dr. Balle's observations that contradicted Plaintiff's testimony regarding the extent of her pain and immobility. At examination, Plaintiff presented in no acute distress, moved easily around the room, sat comfortably, and removed her shoes without difficulty. Tr. 22, 360. Contrary to Plaintiff's testimony that she cannot hold items for long, Plaintiff was able to grip and hold items securely and grasp and manipulate both large and small objects during Dr. Balle's exam. Tr. 22, 360. Such discrepancies between Plaintiff's alleged symptoms and the medical record are clear convincing reasons for finding Plaintiff not fully credible as to the extent of her limitations. *See Carmickle*, 533 F.3d at 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

## II. Medical Testimony

Plaintiff next argues that the ALJ erred in weighing multiple medical opinions. Pl.'s Op. Br. 9–12. Under the current regulations, an ALJ must evaluate all medical opinions and prior administrative medical findings for persuasiveness. In doing so, an ALJ considers the following factors: (1) supportability, as shown by relevant evidence and explanation; (2) consistency with the record as a whole; (3) the relationship between the source and the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 416.920c(c). Of these, supportability and consistency are the most important and must be articulated in the ALJ's decision. *Id.* § 416.920c(b)(2). Further, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a).

### A. Dr. Balle

Kristian Balle, D.O., evaluated Plaintiff in 2019 for back and hand pain. Tr. 359. Although Plaintiff's medical records and laboratory workup were unavailable at the time of assessment, Dr. Balle opined that Plaintiff's "symptoms and mild joint hypertrophy are consistent with rheumatoid arthritis." Tr. 363. Dr. Balle limited Plaintiff to 20 pounds of occasional lifting and carrying/pushing and pulling and 10 pounds frequently. Tr. 363. She also limited Plaintiff to frequent climbing, balancing, stooping, kneeling, crouching, or crawling and occasional reaching, handling, fingering, and feeling. Tr. 363. The ALJ noted that state agency medical consultants affirmed Dr. Balle's functional assessment except for her proposed reaching limitation. Tr. 22. The ALJ found this departure "justified by the medical evidence cited above regarding the claimant's normal strength and mobility at Exhibit 4F. As noted above, the claimant's right shoulder problems were acute in nature and resolved in a matter of weeks. The State agency's assessment is more consistent with such evidence." Tr. 22.

Plaintiff argues the ALJ failed to provide sufficient reasons for rejecting Dr. Balle's limit of occasional handling, fingering, and feeling. Pl.'s Op. Br. 8. Plaintiff contends the ALJ only rejected Dr. Balle's reaching limitation without addressing her handling, fingering, and feeling limitations. *Id.* Plaintiff is correct that the ALJ specifically rejected Dr. Balle's reaching limitation in part because Plaintiff's shoulder problems were "acute in nature and resolved in a matter of weeks." Tr. 22. The ALJ also referred to Plaintiff's "normal strength and mobility at Exhibit 4F" in support of rejecting the reaching limitation. Tr. 22.

Regarding Plaintiff's other manipulative limitations, the ALJ limited Plaintiff's RFC to frequent handling and fingering as opposed to Dr. Balle's more restrictive occasional handling and fingering based on the opinions of the state agency medical consultants. Tr. 22, 85–86. In assessing Plaintiff's limitations, state agency consultant Susan Johnson, M.D., noted that Plaintiff remains independent in nearly all of her activities of daily living, including Plaintiff's ability to prepare meals, perform household chores, use a computer, and do arts and crafts. Tr. 80. Acknowledging that Plaintiff's psoriasis and arthritis are severe, Dr. Johnson limited Plaintiff to light work and "frequent handling and fingering bilaterally secondary to joint pain." Tr. 85–86. As further support that Dr. Balle's more restrictive manipulative limitations were not warranted, the ALJ pointed out that Plaintiff was "able to grip and hold items securely during Dr. Balle's examination." Tr. 22. The ALJ properly weighed conflicting medical evidence as well as inconsistencies in the record and found the state agency consultants' limitations more consistent with the record than Dr. Balle's. Although Plaintiff presents an alternative interpretation of the evidence, it is not this Court's role to second-guess an ALJ's decision that is supported by substantial evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

**B. Dr. Roman**

Pamela Roman, Ph.D., completed a consultive psychological examination of Plaintiff in 2019. Dr. Roman conducted a series of tests with Plaintiff and provided a diagnosis of major depressive disorder. Tr. 351–56. Regarding Plaintiff's attention and concentration, Dr. Roman noted Plaintiff's borderline score on the Digit Span subtest. Tr. 356. Dr. Roman concluded that until Plaintiff's "symptoms of depression have improved, especially her symptoms of sleeping excessively and irritability, it is not likely that she could maintain attention and concentration on

even a part-time basis." Tr. 356. Dr. Roman opined that Plaintiff "will need a period of emotional stability before she could be considered employable." Tr. 356.

The ALJ rejected Dr. Roman's opinion for multiple reasons. First, the ALJ found Dr. Roman's opinion inconsistent with the fact that Plaintiff arrived early for her appointment and "completed all paperwork independently without unusual misspellings." Tr. 23. The ALJ also found inconsistent Dr. Roman's concern that Plaintiff may have borderline intellectual functioning with Plaintiff's schooling history, having attended two years of college for accounting, and Plaintiff's statement on her functional report that she follows instructions "very well". Tr. 23. Finally, the ALJ found Dr. Roman's opinion unsupported by her own observation that Plaintiff "completed Information and Orientation testing 'perfectly.'" Tr. 23. Because of these discrepancies, the ALJ found the state agency consultants' opinions more persuasive than Dr. Roman's. Tr. 23.

Plaintiff argues the ALJ improperly rejected Dr. Roman's opinion based on Plaintiff's intellectual functioning without addressing Dr. Roman's opinions that Plaintiff would be unable to maintain attention and concentration and would require a period of emotional stability before being employable. Pl.'s Op. Br. 11–12. The Court disagrees. The ALJ pointed to multiple discrepancies between Plaintiff's alleged debilitating mental health symptoms, as reported to Dr. Roman, and her ability to function normally. Despite complaints of depressed mood, decreased motivation and energy, and intermittent suicidal ideation, the ALJ noted Plaintiff's ability to follow instructions, complete paperwork, perform "perfectly" on Information and Orientation testing, and attend two years of college for accounting. Tr. 23. The ALJ found Dr. Roman's assessment did not adequately account for such evidence. Tr. 23.

The ALJ further relied on the state agency psychological consultants' opinions, which found Dr. Roman's functional assessment only partially consistent with the record. Tr. 23. State agency consultant Winifred Ju, Ph.D., wrote that Plaintiff has no noted cognitive deficits and is able to understand instructions. Tr. 80. Plaintiff reported a history of depression and possible bipolar disorder, but Dr. Ju noted Plaintiff's lack of medication for either. Tr. 80. Dr. Ju contrasted Dr. Roman's opinion that Plaintiff would need a period of emotional stability before working due to her irritability and excessive sleeping with multiple other exams with other providers where none of them commented on Plaintiff being socially inappropriate, rude, or irritable. Tr. 81. Dr. Ju noted that Plaintiff does not need reminders for personal care or medication and is able to prepare meals and shop for herself. Tr. 81.

At the reconsideration level, state agency consultant Sergiy Barsukov, Psy.D., found Dr. Roman's opinion requiring emotional stability inconsistent with other evidence where Plaintiff was described as being emotionally stable, pleasant, and conversant with no signs of anger or irritability. Tr. 99. He also noted Plaintiff was "relatively independent" in her activities of daily living. Tr. 99. Both state agency consultants found that Plaintiff could sustain simple, multiple-step tasks for normal work periods and could tolerate occasional contact with co-workers and the public. Tr. 23, 87. In light of the noted inconsistencies and direct conflict in the medical evidence, the ALJ did not err in discrediting Dr. Roman's opinion and finding the state agency consultants' opinions more persuasive.

**C. Mr. Race**

Charles Race, PMHNP, treated Plaintiff for psychiatric medication management at Options Counseling Services. He first met with Plaintiff in May 2019 for a psychiatric assessment. Tr. 384. The following January, Mr. Race completed a functional assessment of Plaintiff's capacities and

limitations. Tr. 594. Mr. Race opined that Plaintiff primarily experiences mood instability. Tr. 595.

When asked what limits Plaintiff's mood instability imposes on Plaintiff regarding her ability to

function in a work setting, Mr. Race wrote that he is "not qualified to assess vocational or work

capability." Tr. 595. Despite this statement, Mr. Race later wrote that Plaintiff's moderate mood

instability might cause work absences of greater than two days per month. Tr. 595. In a checkmark

form sent by Plaintiff's attorneys, Mr. Race provided marked limitations in Plaintiff's ability to

understand and remember complex instructions, carry out complex instructions, and make

judgments on complex work-related decisions. Tr. 597–98. Mr. Race provided no explanation for

these limitations.

      The ALJ found Mr. Race's opinion unpersuasive because he "candidly acknowledged that

he was 'not qualified' to assess an individual's vocational or work capability." Tr. 23.

Additionally, the ALJ found his opinion undermined by other factors. The ALJ first noted that his

treating relationship with Plaintiff did not include visits every two months since May 2019 as his

report suggested. Tr. 23. Mr. Race saw Plaintiff only once, said the ALJ, and subsequent

appointments were handled by other staff at Mr. Race's facility. Tr. 23. The ALJ found that Mr.

Race's functional assessment was also contradicted by one of his colleagues at Options Counseling

describing Plaintiff as "balanced and in-control," as well as by group therapy notes that describe

the claimant as "stable" and "actively engaged" during sessions. Tr. 23. Overall, the ALJ

determined that the evidence suggested Plaintiff "retained significant mental function despite her

depressive disorder." Tr. 23.

      Plaintiff first takes issue with the ALJ's assertion that Mr. Race only met with Plaintiff

once in May 2019. Pl.'s Op. Br. 14. Plaintiff is correct that Mr. Race saw Plaintiff again in June,

September, and November 2019 for medication management. Tr. 389, 396, 403. The Court finds

this error harmless, however, because the ALJ pointed to valid reasons aside from the treatment relationship to discount Mr. Race's opinion. As the ALJ noted, in a functional assessment of Plaintiff's capabilities and limitations related to her ability to work, Mr. Race acknowledged that he is unqualified to assess work capability. The ALJ further found Mr. Race's limitations undermined by other therapy notes. The ALJ did not err in finding Mr. Race's opinion unpersuasive based on his admitted lack of expertise and contradiction with the medical evidence.

## III. Lay Witness Testimony

In addition to Plaintiff's own subjective allegations, Plaintiff's boyfriend submitted statements in support of Plaintiff's disability. Tr. 233–40. Plaintiff argues that the ALJ erred by failing consider and failing to provide germane reasons for discounting this lay witness testimony. The Commissioner concedes that the ALJ did not evaluate this lay witness testimony as part of her decision but contends that this error was harmless. Def.'s Br. 9, ECF No. 16.

Lay witness testimony regarding a claimant's symptoms or limitations is "competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114. Typically, an ALJ must provide "germane reasons" for rejecting lay testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). However, failure to provide a reason for discounting lay witness testimony is harmless where "the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims." *Molina*, 674 F.3d at 1122 (cleaned up) (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

To the extent Plaintiff's boyfriend offered opinions regarding Plaintiff's limitations, his opinions generally mirrored Plaintiff's own allegations. As the lay testimony generally described the same limitations alleged by Plaintiff, and as the ALJ did not err in rejecting Plaintiff's own

testimony as to the extent of her limitations, any error in not addressing the lay testimony of Plaintiff's boyfriend is harmless. *Id.*

## **CONCLUSION**

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 29th day of September, 2022.

___**s/Michael J. McShane**_____ ____

Michael J. McShane
United States District Judge